1  Mark S. Perelman - 120961
   Thomas P. Mazzucco - 139758
2  Jason E. Fellner - 245364
   MURPHY, PEARSON, BRADLEY & FEENEY
3  88 Kearny Street, 10th Floor
   San Francisco, CA  94108-5530
4  Tel:   (415) 788-1900
   Fax:   (415) 393-8087
5  tmazzucco@mpbf.com
   Attorneys for Plaintiff
6  MICHAEL C. HEFLIN

7

FILED

2009 DEC 29  AM 11: 03

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10 MICHAEL C. HEFLIN, an individual,         Case No.: CV09-7587 R (AJWx)
                                             *[Assigned to Hon. Manuel Real, Ctrm 8]*
11      Plaintiff,
                                             **FIRST AMENDED COMPLAINT**
12 v.
                                             JURY TRIAL DEMAND
13 COUNTY OF LOS ANGELES, a public entity;
   LEROY BACA, an individual; DOES 1 through
14 10, inclusive,                            **BY FAX**
15      Defendants.

16

17      Plaintiff MICHAEL C. HEFLIN (referred to as "Plaintiff" or "HEFLIN") is informed and

18 believes, and on that basis, alleges as follows:

19                      I.      JURISDICTION AND VENUE

20      1.      Jurisdiction in this Court is proper in that the amount exceeds, exclusive of interest and

21 costs, the sum of $25,000.

22      2.      Venue is proper in this district because this is an action against the COUNTY OF LOS

23 ANGELES and its employee SHERIFF LEROY BACA.

24                          II.      PARTIES

25      3.      Plaintiff MICHAEL C. HEFLIN is an individual and a resident of Orange County.

26      4.      At all times herein-mentioned, defendant COUNTY OF LOS ANGELES (the "County"

27 or "CLA") was and is a governmental entity existing under and by virtue of the laws of the state of

28 California.

                                     - 1 -
                          FIRST AMENDED COMPLAINT

5.     Defendant LEROY BACA ("BACA") is an individual who is and at all times relevant to the allegations made in this complaint was the Sheriff of the Los Angeles Sheriff Department ("LASD").  At all times herein-mentioned, defendant BACA was the agent, servant, employee, co-conspirator, partner, joint venture, alter ego, affiliate, and/or franchisee of CLA and/or LASD, and each was at all times acting within the scope of such agency, service, partnership, employment, joint venture, affiliation, and/or franchise.

6.     Plaintiff is ignorant of the true names, identities and capacities of persons named herein as Does 1 through 10 inclusive.  Each of the fictitiously named defendants is responsible in some manner for the acts and wrongdoings alleged herein.  At all times relevant herein, each of the fictitiously named defendants were acting as agents for each of the other defendants.

## III.    INTRODUCTION

7.     Los Angeles County Deputy Sheriff Robert Avery McClain, while acting within the scope of his employment and under color of law with the use of his LASD training, authority and department issued firearm, forced Plaintiff into a room located on property owned and operated by The Irvine Company ("TIC").   Within the scope of his employment as a Deputy Sheriff, McClain intentionally and unlawfully caused permanent disability, disfigurement and deprivation of a limb, organ, and body member of Plaintiff by physically and emotionally torturing Plaintiff on September 28, 2008.  Defendants are vicariously liable for the acts and omissions of Deputy Sheriff McClain.  In addition, CLA and Baca owed an independent duty to protect Plaintiff from the harm inflicted upon him by Deputy Sheriff McClain based upon the statutory pre-hire requirements set forth in the POST regulations, which were adopted by CLA.  CLA and Baca negligently hired and trained McClain, giving him peace officer status and authority, which he used to inflict severe injury upon Plaintiff. Furthermore, CLA and Baca violated the mandatory duties set forth in the California POST regulations.

## IV.    ADMINISTRATIVE CLAIM

8.     Within six months of the happening of the matters herein alleged, Plaintiff timely filed with the governing board of CLA an administrative claim in compliance with the applicable provisions of the California Government Code.  Subsequently, said claim was denied.  This complaint is timely

1    filed within the time permitted by law after the denial of such claim.

2                            III.    **GENERAL ALLEGATIONS**

3    A.    Los Angeles Sheriff Department Recruitment and Training Standards

4           9.    Pursuant to Los Angeles County Code §2.34.060, the County, while receiving aid from

5    the state of California, will adhere to the standards for recruitment and training established by the

6    California Commission on Peace Officers Standards and Training ("POST"). POST is an independent

7    commission that devises minimal requirements for pre-hire protocols and procedures for law

8    enforcement agencies, such as the LASD.

9           10.    POST is charged with the responsibility to develop selection standards for peace

10   officers. (Penal Code §13510.) As a California regulatory agency, POST establishes regulations in

11   accordance with the Administrative Procedures Act. Once properly adopted, these regulations appear

12   in the California Code of Regulations and the POST Administrative Manual.[1]   "The POST

13   Administrative Manual provides the procedure for the background investigation, which 'shall be

14   followed in the pre-employment investigation of each peace officer and/or public safety dispatcher and

15   shall be completed on or before the appointment date.'"   (*Hulings v. State Dept. of Health Care*

16   *Services* (2008) 159 Cal.App.4[th] 1114, 1123 (citing 11 Cal. Code Regs. Tit. 11, § 1002(a)).) "A public

17   agency must enforce the criteria for peace officers in Government Code § 1031 at the time of hire."

18   (*Pitts v. City of Sacramento* (2006) 138 Cal.App.4[th] 853, 857, fn. 3; see also *Sager v. County of Yuba*

19   (2007) 156 Cal.App.4[th] 1049, 1058.) The POST regulations were adopted to protect the public,

20   including Plaintiff, from individuals not fit to perform the duties of a peace officer, including the

21   power to wield state authority under the law.

22           11.    The Penal Code provides that municipalities such as defendant COUNTY can receive

23   state funds for specified law enforcement purposes. As a condition of receiving such funds, a

24   municipality such as defendant CLA must agree to recruitment and training standards established

25   POST. (Penal Code § 13522.) "To be eligible for participation in the POST Program, a department

26   shall agree to comply with and continue to adhere to minimum selection and training standards and all

27

28   [1] A Copy of the POST Administrative Manual is Attached as Exhibit "A"

1  Commission Regulations." (11 C.C.R. § 9030(a) (emphasis added); see also Penal Code §§ 13500,

2  13510, 13522.)

3       12.    Government Code § 1031 states in pertinent part, "Each class of public officers or

4  employees declared by law to be peace officers shall meet all of the following minimum standards: …

5  (d) Be of good moral character, as determined by a thorough background investigation … (f) Be found

6  to be free from any physical, emotional, or mental condition that might adversely affect the exercise of

7  the powers of a peace officer. (1) Physical condition shall be evaluated by a licensed physician and

8  surgeon. (2) Emotional and mental condition shall be evaluated by either of the following: (A) A

9  physician and surgeon [with psychiatry training] (B) A [licensed] psychologist … (g) this section shall

10 not be construed to preclude the adoption of additional or higher standards, including age." (Gov.

11 Code § 1031 (emphasis added); see also 11 Cal. Code Reg. §§ 9053, 9055.)

12      13.    The purpose of the background investigation established in § 9053 is to verify the

13 absence of past behavior indicative of unsuitability to perform the duties of a peace officer.

14 (Commission Procedure C-1.) The background investigation procedure "shall be followed in the pre-

15 employment investigation of each peace officer … candidate and shall be completed on or before the

16 appointment date." (Commission Procedure C-1, 1-2.) "The manner in which a background

17 investigation is conducted can make the difference between hiring an individual who will truly protect

18 and serve versus someone who may cause harm to oneself, the agency, and society." (POST

19 Background Investigation Manual 1-1.)

20      14.    The purpose of the psychological suitability examination is to select personnel who are

21 free from any mental or emotional condition that would be expected to adversely affect their

22 performance as a peace officer. (Commission Procedure C-2, 2-1.) "The psychological suitability

23 examination requirement, include: (a) A minimum of two psychological test shall be used. One must

24 be normed in a manner as to identify patterns of abnormal behavior; the other must be oriented toward

25 assessing relevant dimensions of normal behavior. (b) A clinical interview shall be conducted. The

26 psychological test results shall be reviewed in advanced by the individual who conducts the interview.

27 (c) Interpretation of the psychological test score information and conduct of the clinical interview shall

28 be performed by a qualified professional." (Commission Procedure C-2, 2-9.)

FIRST AMENDED COMPLAINT

1        15.    Government Code §1029(A) & (B) provides that individuals who have been convicted

2    of a felony, as well as felony-level and felony-related offenses are prohibited from becoming peace

3    officers.  Similarly, Penal Code § 12021(c) includes a list of misdemeanors that result in a ten-year

4    firearm ban, which prevent an individual's ability to perform essential peace officer job functions.  In

5    addition, 18 U.S.C. § 922(d)(9) provides that an individuals who have been convicted of domestic

6    violence cannot possess a firearm.  The background investigation provides mandatory inquiries for the

7    investigator in order to determine whether the candidate has committed a felony or misdemeanor.  (*See*

8    *e.g.* Gov. Code § 1031.)

9        16.    All peace officers, including those administering the background investigations

10   complying with POST, adhere to the POST Code of Ethics, which provides the following, in pertinent

11   part: "As a law enforcement officer, my fundamental duty is to serve mankind; to safeguard lives and

12   property; to protect the innocent against deception, the weak against oppression or intimidation, and

13   the peaceful against violence or disorder; and to respect the Constitutional rights of all men to liberty,

14   equality and justice."  (Commission Procedure C-3, 3-2.)

15   B.    Defendant LASD Hires Robert Avery McClain as a Peace Officer

16       17.    In 2007, Robert Avery McClain ("McClain") applied for a position as Deputy Sheriff

17   with the Los Angeles Sheriff's Department.  The CLA failed to follow the mandatory procedures and

18   protocols established by POST.  For example, the CLA failed to administer a background check in

19   accordance with the POST regulations and also failed to evaluate McClain's psychological state of

20   mind as required by the POST regulations.  CLA failed to follow these objective procedures prior to

21   hiring McClain as a Deputy Sheriff for the LASD.

22       18.    In all, McClain should never have been hired and trained as a Deputy Sheriff of the

23   LASD nor should he have been issued a firearm and granted peace officer powers and authority.  The

24   background information, set forth below, shows that McClain had a proclivity towards violent

25   behavior, a history of bad judgment, and exhibited immoral behavior.  Had the BIU investigators

26   followed the mandatory procedures and protocols established by the POST regulations, McClain

27   would never have been hired and would never have had the police power to cause Plaintiff injury.

28   ///

FIRST AMENDED COMPLAINT

19.   McClain's prior history indicated the following:

    a.   McClain graduated high school with a 2.1 grade point average.

    b.   In high school, McClain was suspended from school for fighting.

    c.   McClain had his driver's license suspended because he failed to appear in court on a speeding ticket. A warrant for his arrest was issued after he failed to appear in court.

    d.   McClain's driver's license remained suspended for eight years.

    e.   McClain was stopped by law enforcement for not having registration tabs displayed and, during the traffic stop, was cited for driving with a suspended license and failure to pay a traffic fine.

    f.   McClain was also stopped by law enforcement on another occasion and was cited for driving with a suspended license and not having proof of financial responsibility.

    g.   McClain had eight past due accounts on his credit report. Of the eight, three accounts were in collections.

    h.   While serving with the U.S. military, McClain received discipline and was disciplined for going absent without leave ("AWOL"). As a result of him going AWOL, McClain received a reduction in grade and confined to base for 30 days.

    i.   McClain was listed as a suspect in an embezzlement report with an outside law enforcement agency.

    j.   McClain had a domestic violence related restraining order issued against him for fighting with his stepson's biological father.

    k.   McClain failed to provide the background check investigator with all the requested documents that the investigator sought.

    l.   McClain failed the first polygraph examination.

    m.   McClain failed to identify and describe all of his tattoos, including the tattoo emblazoned on his body with the word "INSANE."

20.   Despite the fact that McClain's prior history contained a large amount of negative information including, violent behavior, procrastination, military discipline, negative credit history and failure to mention police report regarding embezzlement, the CLA improperly hired McClain. BIU personnel never spoke with McClain's wife or his wife's family, all of whom could have alerted BIU personnel that McClain also had a history of violence against his wife. BIU personnel failed to follow the mandatory procedures set forth in the POST regulations.

///

FIRST AMENDED COMPLAINT

C.    Los Angeles County Office of Independent Review

21.    On February 18, 2009, the Los Angeles County Office of Independent Review ("OIR") determined that the background investigation of McClain was "not as thorough as it could have been." The OIR report provided in pertinent part, "[e]ven when there were opportunities to verify explanations provided by the applicant, BIU personnel routinely accepted the applicant's version of events.[2] For example, there is no evidence … that indicates the BIU investigator interviewed the relative about whether she was sick and whether the applicant visited her during that period of time. There is also no documentation that indicates whether the military was contacted to verify the applicant's account of events. There is also no documentation that indicates the BIU investigator ever interviewed the 'friend' who filed the embezzlement report with the outside law enforcement agency … There was no documented effort to obtain a copy of any documents related to the restraining order that was issued against the applicant or independently learn of the facts resulting in its issuance." The existence of a restraining order should have disqualified McClain from being hired as a peace officer for the CLA. At a minimum, the existence of a restraining order should have been the first clue of McClain's violent and dangerous propensities, which would have prevented him from becoming a peace officer and possessing a firearm. The OIR report further stated that "[i]t is unclear what information the psychologist initially received on this applicant." The BIU background investigation of McClain was not consistent with the minimum requirements set forth in the POST regulations, which LASD was duty bound to follow pursuant to the Los Angeles County Code § 2.34.060.

22.    Because LASD did not follow the mandatory requirements for background checks set forth in the POST regulations, including the administration of the background check and psychological evaluation, McClain was provided a firearm and given the authority to wield his power under color of law. CLA and LASD's failures in following the mandatory POST regulations was a substantial factor in causing the injuries and harms sustained by Plaintiff.

23.    At the time of McClain's hire as a Deputy Sheriff, McClain was irresponsible, hot-tempered, aggressive, manic, and not suitable to perform the duties of a peace officer. As the OIR

---

[2] A Copy of the OIR Report is Attached as Exhibit "B."

1  report indicates, the inadequate BIU report showed that McClain did not meet the minimum

2  requirements of a peace officer under the POST requirements.   In addition, the procedures and

3  protocols of the POST regulations were not followed.  A background investigation conforming to the

4  POST regulations would have certainly revealed a vast amount of negative information and

5  psychological problems that McClain had at that time, all of which would have indicated that McClain

6  did not meet the minimum requirements of a peace officer under the POST requirements.

7       24.    Despite the CLA's failure to follow the objective procedures and protocols set forth in

8  the POST regulations and glaring omissions in McClain's background and psychological check, the

9  LASD offered him a position as Deputy Sheriff in late, 2007.  Thereafter, CLA through the LASD

10  provided McClain with a department issued firearm, authority to carry a concealed weapon, and

11  trained McClain how to wield his authority under color of law.   It was highly foreseeable that

12  "INSANE" McClain would wield his power of authority under the law in a dangerous manner

13  consistent with his prior bad acts, including the use of his power under color of law to imprison

14  Plaintiff in order to emotionally and physically torture Plaintiff by using his LASD issued firearm, for

15  which he was trained.  As a Deputy Sheriff, McClain was also permitted to carry with him his

16  concealed weapon, which he did when he first encountered Plaintiff on September 28, 2008.

17  D.    Plaintiff Resided at Woodbury Court Apartments in Irvine, California

18       25.    In September, 2008, Plaintiff was a resident at Woodbury Court in Irvine, California.

19  Woodbury Court is owned and operated by TIC.  TIC maintains a secured leasing office at Woodbury

20  Court.

21  E.    Deputy Sheriff Robert McClain Intentionally Injures Plaintiff

22       26.    Sometime in 2008, Deputy McClain learned that his wife was having an affair with

23  Plaintiff.

24       27.    McClain accompanied Employee to Plaintiff's residence at Woodbury Court on the

25  evening of September 28, 2008 to confront Plaintiff about the affair.  Under color of law and within the

26  scope of his employment, McClain persuaded Plaintiff to exit his residence and walk with McClain

27  and Employee towards the Woodbury Court leasing office.  McClain stated that he was a Los Angeles

28  Deputy Sheriff and that he wanted to speak with Mr. Heflin.

FIRST AMENDED COMPLAINT

28.     Plaintiff's roommates witnessed Deputy Sheriff McClain at the front door and knew that he was a peace officer.  As a result, Plaintiff's roommates did not perceive a threat to Plaintiff's safety and did not contact the police when Mr. Heflin did not return hours after he was taken by Deputy Sheriff McClain.

29.     Using his peace officer status and training, McClain removed Plaintiff from Plaintiff's apartment.  During this process McClain identified himself as a peace officer, exerted control over Plaintiff, and directed Plaintiff to the torture location in TIC's leasing office.

30.     McClain told Employee and Plaintiff that he wanted to speak with Plaintiff in private.  Employee agreed to open the leasing office so they could talk in private.  Employee opened the leasing office door with her business key, deactivated the alarm after hours, and then proceeded with Deputy McClain and Plaintiff into the empty office building.

31.     Once inside, McClain, acting under color of law and within the scope of his employment as a peace officer, proceeded to physically and emotionally torture Plaintiff.  Believing that Plaintiff was dead, McClain left the leasing office with Employee.  McClain failed to alert any medical personnel of the incident or Plaintiff's substantial injuries.  Plaintiff was found in a pool of blood the following morning by the TIC personnel.

32.     On September 29, 2008, Plaintiff was taken to Western Medical Center in Irvine, California.  He arrived completely nude and unconscious.  Plaintiff had multiple large open facial wounds, both of his eyes were deeply cut, his groin area slashed, he had wounds on his arms, chest and back, he had been strangled, and his face was crushed.  Plaintiff lay unconscious in the hospital for nine days.

F.    Criminal Charges Filed Against Deputy Sheriff McClain

33.     McClain is currently incarcerated and awaiting trial for committing the heinous criminal acts against Heflin.  McClain has been criminally charged in Superior Court of California, Orange County, Case Number 09-HF-1870 for his violent actions against Plaintiff and Employee.  McClain faces the following criminal counts: (1) Aggravated Mayhem (P.C. § 205); (2); (3) Torture (P.C. § 206); (3) Forcible Oral Copulation (P.C. § 288(c)(2)); (4) Sexual Penetration by Foreign Object by Force (P.C. § 289(a)(1); (5) Spousal Rape by Force (P.C. § 262(a)(1); (6) Sodomy by Future Threat

FIRST AMENDED COMPLAINT

1   (P.C. § 286(c)(3); (7) Kidnapping to Commit Sex Offense (P.C. § 209(b)(1); (8) Domestic Battery with

2   Corporal Injury (P.C. § 273.5(a); (9) Personal Use of Deadly Weapon (P.C. § 12022(b)(1); (10)

3   Personal Use of Firearm (P.C. § 12022.53(b); and (10) Use of Fire Arm or Deadly Weapon (P.C. §§

4   12022., 12022.3, 12022.5, 12022.53.)  Plaintiff does not name McClain as a defendant in this lawsuit

5   because a civil suit against him would be a futile act.  The above charges carry with them the potential

6   for life in prison for McClain.

### FIRST CAUSE OF ACTION
**[General Negligence (Cal. Gov. Code § 815.2(a))]**
**[Against Defendants CLA and BACA]**

9       34.    Plaintiff hereby incorporates by this reference each and every allegation contained in

10   paragraphs 1 to 33 above as though fully set forth here.

11       35.    At all times herein-mentioned, in carrying out the acts described above, defendants

12   acted negligently, recklessly, and carelessly in failing to follow their pre-hire screening and training

13   standards set forth in the POST regulations so as to cause McClain to be hired and trained as a Deputy

14   Sheriff for the LASD.  As a result, McClain was free to wield his power of authority under color of

15   law.  Defendants owed a duty of care to Plaintiff as a foreseeable victim of McClain's violent

16   propensities.  Defendants hired, trained and employed Deputy Sheriff McClain and are also vicariously

17   liable for Deputy Sheriff McClain's conduct, which occurred within the scope of his employment.

18   Defendant's acts and omissions were a substantial factor in causing Plaintiff's injuries.

19       36.    At all times herein-mentioned, in carrying out the acts described above, deputy Sheriff

20   McClain acted negligently, recklessly, and carelessly in physically and emotionally torturing Plaintiff

21   within the scope of his employment as a peace officer for CLA.  Defendant's acts and omissions were

22   a substantial factor in causing Plaintiff's injuries.

23       37.    As a direct and legal result of the negligence and carelessness of defendants, and each

24   of them, Plaintiff Michael Heflin has sustained serious emotional and physical injuries resulting from

25   the acts and omissions of defendants and Deputy Sheriff McClain, all to Plaintiff's special and general

26   damages in an amount in excess of the jurisdictional minimum for this court.

27       38.    By reason of the emotional and physical injuries sustained by Plaintiff, Plaintiff

28   incurred medical expenses as will be determined at the time of the trial in this matter.

WHEREFORE, Plaintiff prays for judgment for damages as hereinafter set forth.

## SECOND CAUSE OF ACTION

### [Violations of Mandatory Duties Imposed by California Statutes (Cal. Gov. Code § 815.6)]
### [Against Defendants CLA and BACA]

39.　Plaintiff hereby incorporates by this reference each and every allegation contained in paragraphs 1 to 38 above as though fully set forth here.

40.　Defendants' above-described conduct, policies, practices, customs, and/or omissions violated Plaintiff's rights as protected by the California statutes.

41.　As a direct and legal result of the conduct of defendants in failing to carry out mandatory statutory duties as described herein, Plaintiff has suffered, continues to suffer, and will in the future suffer as the result of the personal injury inflicted upon Plaintiff Michael Heflin, all to Plaintiff's general and special damages in an amount in excess of the jurisdictional minimum for this court.

42.　As a direct and legal result of the aforesaid, Plaintiff suffered the following injuries and damages: (a) Violation of his rights under the California statutes; and (b) severe emotional and physical injuries.

WHEREFORE, Plaintiff prays for judgment for damages as hereinafter set forth.

WHEREFORE, Plaintiff prays for damages against defendants, and each of them as follows:

1.　For compensatory damages according to proof;

2.　For special damages according to proof;

3.　For costs of suit incurred herein;

4.　For prejudgment interest as provided by law; and

5.　For such other and further relief as the Court may deem proper.

DATED: December 16, 2009

MURPHY, PEARSON, BRADLEY & FEENEY

By _____
Mark S. Perelman
Thomas P. Mazzucco
Jason E. Fellner
Attorneys for Plaintiff

- 11 -

FIRST AMENDED COMPLAINT

1

**DEMAND FOR JURY TRIAL**

2

DATED:  December 16, 2009

3

MURPHY, PEARSON, BRADLEY & FEENEY

4

5

By

6

Mark S. Perelman
Thomas P. Mazzucco

7

Jason E. Fellner
Attorneys for Plaintiff

8

9

JEF.20071036.doc

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -

FIRST AMENDED COMPLAINT

1

CERTIFICATE OF SERVICE

2      I, Eileen J. Lenihan/Tanya L. Hill, declare:

3      I am a citizen of the United States, am over the age of eighteen years, and am not a party to or

4 interested in the within entitled cause.  My business address is 88 Kearny Street, 10th Floor, San

5 Francisco, California 94108-5530.

6      On December 16, 2009, I served the following document(s) on the parties in the within action:

7

**FIRST AMENDED COMPLAINT**

8

| | |
|---|---|
| **X** | **BY MAIL**: I am familiar with the business practice for collection and processing of mail. The above-described document(s) will be enclosed in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service at San Francisco, California on this date, addressed as follows: |
| | **BY HAND**: The above-described document(s) will be placed in a sealed envelope which will be hand-delivered on this same date by _____, addressed as follows: |
| | **VIA FACSIMILE**: The above-described document(s) will be transmitted via facsimile, and a copy of same will be mailed, on this same date to the following: |
| | **VIA OVERNIGHT SERVICE**: The above-described document(s) will be delivered by overnight service, to the following: |

Catherine M. Mathers         Attorney For County of Los Angeles and Leroy
Collins Collins Muir + Stewart, LLP     Baca
1100 El Centro Street           DEFENDANTS
South Pasadena, CA  91030

      I declare under penalty of perjury under the laws of the State of California that the foregoing is a true and correct statement and that this Certificate was executed on December 16, 2009.

               By _____
                     Eileen J. Lenihan/Tanya L. Hill

- 13 -

FIRST AMENDED COMPLAINT