Mark S. Perelman – 120961
Timothy J. Halloran - 104498
Jason E. Fellner – 245364
MURPHY, PEARSON, BRADLEY & FEENEY
88 Kearny Street, 10th Floor
San Francisco, CA  94108-5530
Tel:     (415) 788-1900
Fax:     (415) 393-8087

Attorneys for Plaintiff
MICHAEL C. HEFLIN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL C. HEFLIN, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, a public entity;<br>LOS ANGELES COUNTY SHERIFF'S<br>DEPARTMENT, a public entity; LEROY BACA,<br>an individual; THE IRVINE COMPANY, INC., a<br>California limited liability company; DOES 1<br>through 10, inclusive,,<br><br>        Defendants. | Case No.: CV 09-7587-R (AJW)<br><br>**PLAINTIFF MICHAEL C. HEFLIN'S OPPOSITION TO DEFENDANTS COUNTY OF LOS ANGELES AND SHERIFF LEROY BACA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [F.R.C.P. 12(b)(6)]**<br><br>**Date:  February 1, 2010**<br>**Time:  10:00 a.m.**<br>**Location: Courtroom 8** |

# TABLE OF CONTENTS

**Page**

I.      FIRST AMENDED COMPLAINT STATES VALID CLAIMS AGAINST COUNTY ............1

II.     INTRODUCTION ...........................................................................................................3

III.    PERTINENT FACTUAL ALLEGATIONS....................................................................4

IV.     BACKGROUND STATUTES AND REGULATIONS ...................................................5

V.      LEGAL STANDARD .....................................................................................................8

VI.     LEGAL ARGUMENT ....................................................................................................8

      A.      Public Entity Liability Applies in this Unique Case ...........................................8

      B.      Plaintiff Has Stated a Claim for Relief under Gov. Code § 815.2 .......................9

            1.      Deputy Sheriff McClain's Conduct Gives Rise to Defendant County's Negligence ............................................................................10

            2.      Sheriff LeRoy Baca and BIU Personnel's Conduct Give Rise to Defendant County's Negligence ....................................................13

      C.      Plaintiff Has Stated a Claim for Relief under Gov. Code § 815.6 ...................16

            1.      The Pre-Screening Objective Procedural Requirements Are Mandatory, Not Discretionary ....................................................16

            2.      The Pre-Screening Requirements of Peace Officers Is Intended to Protect Against the Risk of Injury Suffered by Plaintiff ................20

            3.      Breach of the Mandatory Duty Was Proximate Cause of Injury .......................20

VII.    CONCLUSION ..............................................................................................................21

**TABLE OF AUTHORITIES**

Page

**Cases**

*Aubry v. Tri-City Hospital Dist.*
(1992) 2 Cal.App.3d 1059............................................................................8

*Bell Atl. Corp.*
(2007) 550 U.S. 544......................................................................................8

*Bonsignore v. City of New York*
(1982) 683 F.2d 635....................................................................................14

*City of Hemet v. Superior Court*
(1995) 37 Cal.App.4th 1411..........................................................................3

*Commission on Peace Officer Standards and Training v. Superior Court*
(2007) 42 Cal.4th 278.....................................................................3, 14, 17

*Corona v. State of California*
(Cal.App.4th 2009) 100 Cal.Rptr. 3d 591...................................................19

*County of Riverside v. Superior Court*
(2002) 27 Cal.4th 793............................................................................15, 20

*de Villers v. County of San Diego*
(2007) 156 Cal.App.4th 238........................................................................19

*Eastburn v. Regional Fire Protection Authority*
(2003) 31 Cal.4th 1175...........................................................................13, 14

*Farmers Ins. Group v. County of Santa Clara*
(1995) 11 Cal.4th 992..................................................................................13

*Gray v. Udevitz*
(10th Cir. 1981) 656 F.2d 588........................................................................3

*Haggis v. County of Los Angeles*
(2000) 22 Cal.4th 490...........................................................................16, 20

*Hulings v. State Dept. of Health Care Services*
(2008) 159 Cal.App.4th 1114.............................................................6, 17, 20

*Jordan v. City of Sacramento*
(2007) 148 Cal.App.4th 1487........................................................................8

*Lisa M. v. Henry Mayo Newhall Memorial Hospital*
(1995) 12 Cal.4th 291.............................................................................9, 10

-ii-

# TABLE OF AUTHORITIES
(continued)

Page

*Lockhart v. County of Los Angeles*
(2007) 155 Cal.App.4th 289 .................................................................................8

*Lopez v. Smith*
(9th Cir. 2000) 203 F.3d 1122.............................................................................8

*M.P. v. City of Sacramento*
(2009) 177 Cal.App.4th 121 ...........................................................................9, 10

*Mary M. v. City of Los Angeles*
(1991) 54 Cal.3d 202 ...............................................................................9, 12, 13

*Perez v. Van Groningen & Sons, Inc.*
(1986) 41 Cal.3d 962 ...........................................................................................9

*Pitts v. City of Sacramento*
(2006) 138 Cal.App.4th 853 ..........................................................................6, 17

*Sager v. County of Yuba*
(2007) 156 Cal.App.4th 1049 ........................................................................6, 17

*Sutherland v. City of Fort Bragg*
2000) 86 Cal.App.4th 13 .............................................................................20, 21

*Trewin v. State of California*
(1984) 150 Cal.App.3d 975...............................................................................19

*Usher v. City of Los Angeles*
(9th Cir. 2008) 536 F.3d 1049.............................................................................8

*Van Ort v. Estate of Stanewich*
(9th Cir. 1996) 92 F.3d 831...........................................................................10, 11

**Statutes**

Civil Code
  §1714 ................................................................................................................14

Government Code
  §810 *et seq.* .......................................................................................................8
  §815.2.........................................................................................1, 2, 4, 8, 9, 14, 16
  §815.6.............................................................................................1, 4, 8, 16, 20, 21
  §1029(A) ............................................................................................................7
  §1029(B) ............................................................................................................7
  §1031 .......................................................................................6, 7, 15, 16, 17, 18, 20

-iii-

# TABLE OF AUTHORITIES
(continued)

**Page**

Health & Safety Code
   §1799.107................................................................................................13

Los Angeles County Code
   §2.34.060.................................................................................2, 5, 14, 16, 17

Penal Code
   §12021(c)..................................................................................................7
   §13500.............................................................................................6, 14, 18
   §13510.........................................................................................6, 14, 17, 18
   §13522.........................................................................................6, 14, 18
   §13523...................................................................................................17


## Other Authorities
POST Administrative Manual..................................................................................6
   Commission Procedure C-1 ............................................................7, 15, 18, 20
   Commission Procedure C-1, 1-2 ...................................................................7, 18
   Commission Procedure C-1, 1-3, 1-4................................................................18
   Commission Procedure C-2, 2-1 ...................................................................7, 18
   Commission Procedure C-2, 2-9 ...................................................................7, 19
   Commission Procedure C-3 .............................................................................6
   Commission Procedure C-3, 3-2 ...................................................................8, 15

POST Background Investigation Manual
   1-1 .............................................................................................7, 18
   1-2 .................................................................................................20


## Rules
Federal Rules of Civil Procedure
   Rule 12(b)(6).............................................................................4, 8, 16, 21


## Regulations
11 California Code of Regulations
   §1002(a) ..............................................................................................6, 17
   §9030(a) .............................................................................................6, 14, 18
   §9030(b)(1) ........................................................................................17, 19
   §9050..................................................................................................16
   §9053.....................................................................................6, 7, 15, 16, 18, 20
   §9055..............................................................................................6, 16, 18

OPPOSITION TO DEFENDANTS COUNTY OF L.A./BACA'S MOTION TO DISMISS 1ST AMENDED COMPLAINT
CASE NO. CV 09-7587-R (AJW)

**TABLE OF AUTHORITIES**
(continued)

Page

21 Code of Federal Regulations
Part 13071(a)................................................................................................................19

**United States Code**

18 U.S.C.
§922(d)(9) ....................................................................................................................7

OPPOSITION TO DEFENDANTS COUNTY OF L.A./BACA'S MOTION TO DISMISS 1ST AMENDED COMPLAINT
**CASE NO. CV 09-7587-R (AJW)**

I.   **FIRST AMENDED COMPLAINT STATES VALID CLAIMS AGAINST COUNTY**

On December 7, 2009, this Court granted Defendants County of Los Angeles and Leroy Baca's (referred to as "COUNTY") motion to dismiss on the following pertinent grounds:

(1) As to PLAINTIFF's First Cause of Action for General Negligence (California *Government Code* § 815.2), (a) Plaintiff failed to state a claim in that there are no facts alleged to support a finding that Robert McClain was acting within the scope of employment.  (b) Additionally, there are no facts alleged to support a finding that there was a special relationship between COUNTY employees and PLAINTIFF.  There was no duty on the part of COUNTY DEFENDANTS to prevent the attack on Plaintiff.

(2) As to Plaintiff's Second Cause of action for Violations of Mandatory Duties (California *Government Code* § 815.6), Plaintiff failed to state a claim in that the codes and regulations alleged by PLAINTIFF describe a duty to investigate which involves the exercise of discretion thus cannot form the basis of liability under *Government Code* § 815.6.

The First Amended Complaint[1] filed by Plaintiff sufficiently addresses this court's prior order in the following manner:

(1) (a) Plaintiff specifies that Robert McClain was acting within the scope of employment when he violently attacked Plaintiff at the Woodbury Court apartments.  The allegations provide that Deputy Sheriff McClain identified himself as a peace officer.  Plaintiff's roommates saw that he was a peace officer and did not take any action believing that Plaintiff was safe in Deputy Sheriff McClain's company.  Furthermore, Sheriff McClain told Plaintiff to keep his hands where he could see them as he was a peace officer.  Sheriff McClain also brandished his state issued firearm in leading Plaintiff to an isolated location where he inflicted severe injuries upon Plaintiff.  Consequently, the facts alleged clearly overcome defendant COUNTY's claim that Deputy Sheriff McClain was not acted within the scope of his employment. In any event, whether Deputy Sheriff McClain was acting within the scope of his employment is an issue of fact to be determined by a jury.

(1) (b)   In addition, the COUNTY owed an independent duty to protect Plaintiff from the

---

[1] A copy of the First Amended Complaint is attached to this Opposition marked as Exhibit "1."

1  foreseeable harm of Deputy Sheriff McClain.  One of the central purposes of the pre-screen POST

2  regulations was to protect foreseeable victims from potentially dangerous peace officers.  The First

3  Amended Complaint clarifies that the COUNTY, by and through the Background Investigation Unit

4  and Sheriff Baca, is vicariously liable for failing to abide by the mandatory regulations set forth in

5  POST.  This case is distinguished from all of the cases cited by Defendant COUNTY because there is

6  statutory authority, the POST regulations, which triggers negligent hiring and supervision under

7  Government Code § 815.2.  Under defendant's interpretation of the law, there can never be a situation

8  in which a government entity can be sued for negligent hiring and supervision.  This simply is not true.

9  The First Amended Complaint sets forth sufficiently adequate allegations making such a negligence

10  claim against defendant COUNTY.

11      (2) Plaintiff specifies in his First Amended Complaint that the mandatory requirements set forth

12  in the POST regulations are procedural *not* investigative.  The Background Investigation Unit failed to

13  follow the objective procedures specified in the POST regulations.  These failures were highlighted in

14  the Office of Independent Review's February 18, 2009 report, which is attached to the First Amended

15  Complaint.  The BIU background investigation of McClain was not consistent with the minimum

16  requirements set forth in the POST regulations, which LASD was duty bound to follow pursuant to the

17  Los Angeles County Code § 2.34.060.  The First Amended Complaint also attaches a Copy of the

18  POST Administrative Manual, which consists of regulatory and enforceable language.  Despite the

19  CLA's failure to follow the objective procedures and protocols set forth in the POST regulations and

20  glaring omissions in McClain's background and psychological check, the LASD offered him a position

21  as Deputy Sheriff in late, 2007.  Thereafter, CLA through the LASD provided McClain with a

22  department issued firearm, authority to carry a concealed weapon, and trained McClain how to wield

23  his authority under color of law.  It was highly foreseeable that "INSANE" McClain would wield his

24  power of authority under the law in a dangerous manner consistent with his prior bad acts, including

25  the use of his power under color of law to imprison Plaintiff in order to emotionally and physically

26  torture Plaintiff by using his LASD issued firearm, for which he was trained.  As a Deputy Sheriff,

27  McClain was also permitted to carry with him his concealed weapon, which he did when he first

28  encountered Plaintiff on September 28, 2008.  Certainly, COUNTY violated the mandatory duties,

- 2 -

1 | which were a substantial cause to Plaintiff's extensive injuries.

2 |     Plaintiff's overly simplistic motion to dismiss should not be granted. Plaintiff's First Amended

3 | Complaint provides detailed allegations, which support the two causes of action against COUNTY

4 | under the California Government Code. In light of Plaintiff's dismissal of the federal cause of action,

5 | Plaintiff requests that this Court remand this case back to state court prior to issuance of an order on

6 | Defendants' motion to dismiss.

## II.    INTRODUCTION

8 |     Without undergoing the mandatory pre-hire screening procedures for peace officers under the

9 | Los Angeles County Code and applicable California statues and regulations, the Los Angeles Sheriff's

10 | Department hired Robert A. McClain as a peace officer and provided him with peace officer status and

11 | a state issued firearm. Shortly thereafter, Deputy Sheriff McClain, who had exhibited a propensity for

12 | violence, including domestic violence, and other troubling behavior, used his peace officer status,

13 | training and state issued firearm to isolate and torture Plaintiff Michael Heflin on September 28, 2008

14 | at the Woodbury Court apartments, owned and operated by The Irvine Company ("TIC"). As a result

15 | of the torture, Plaintiff was in a coma for nine days and sustained severe emotional and physical

16 | injuries.

17 |     "Law enforcement officers carry upon their shoulders the cloak of authority to enforce the laws

18 | of the state." (*Commission on Peace Officer Standards and Training v. Superior Court* (2007) 42

19 | Cal.4th 278, 297.) "Peace officers 'hold one of the most powerful positions in our society; our

20 | dependence on them is high and the potential for abuse of power is far from insignificant.'" (*Id.* at 299

21 | (citing *City of Hemet v. Superior Court* (1995) 37 Cal.App.4th 1411, 1428).) "A police officer

22 | possesses both the authority and the ability to exercise force. Misuse of his authority can result in

23 | significant deprivation of constitutional rights and personal freedoms, not to mention bodily injury and

24 | financial loss." (*Id.* at 299-300 (*Gray v. Udevitz* (10th Cir. 1981) 656 F.2d 588, 591).)

25 |     In this case, the misuse of peace officer authority occurred on a multitude of levels and resulted

26 | in the significant deprivation of Plaintiff's constitutional rights and personal freedoms, including

27 | devastating bodily injury and significant financial loss. *First*, Deputy Sheriff Robert McClain's used

28 |

-3-

1   his peace officer status and training to isolate and torture Plaintiff Michael Heflin on September 28,

2   2008. *Second*, Sheriff Baca and the Los Angeles Sheriff Department Background Investigation Unit

3   ("BIU") personnel failed to follow mandatory provisions of the pre-hire screening procedures set forth

4   in the California Government Code, Penal Code and corresponding POST regulations before they hired

5   Deputy Sheriff McClain.

6         Plaintiff's case against defendant County of Los Angeles and Sheriff Baca (hereinafter referred

7   to as "COUNTY") is multi-layered.  It is inclusive of direct negligence claims under Government Code

8   § 815.2, failure to discharge its mandatory duties under Government Code § 815.6, and violations of

9   Plaintiff's constitutional due process rights.

10         Plaintiff's direct negligence claim under § 815.2 against the COUNTY is grounded in

11   respondeat superior and vicarious liability based upon the acts and omissions of defendants'

12   employees.  *First*, COUNTY is directly negligence for the acts of its employee Deputy Sheriff

13   McClain under § 815.2.  *Second*, COUNTY is directly negligence for the acts and omissions of its

14   employee Baca and the BIU personnel under § 815.2.

15         Plaintiff's claim against the COUNTY under § 815.6 is grounded in its failure to discharge its

16   mandatory duties under the Los Angeles County Code, California Penal Code, California Government

17   Code, and applicable POST regulations by and through its employees Baca and the BIU personnel.

18         The detailed allegations in Plaintiff's First Amended Complaint certainly overcome the

19   COUNTY'S overly simplistic 12(b)(6) motion to dismiss and remedies any concern the court detailed

20   in its December 2009 order.  The facts, statutes and arguments set forth below, which highlight the

21   allegations in the First Amended Complaint, clearly show that Plaintiff has stated a claim for relief on

22   all of the three causes of action against defendant COUNTY.  As a result, this court should deny the

23   motion in its entirety and order defendant COUNTY to file an answer to the First Amended Complaint

24   permitting discovery to go forward.

## III.   PERTINENT FACTUAL ALLEGATIONS

25

26         On September 28, 2008, Los Angeles County Deputy Sheriff Robert Avery McClain, while

27   acting under color of law and with the use of his LASD training authority and department issued

28   firearm, forced Plaintiff into a room and intentionally tortured Plaintiff causing permanent disability,

- 4 -

1  disfigurement and deprivation of limb, organ and body member of Plaintiff.

2      Sheriff LeRoy Baca was and is charged with the responsibility of enforcing the POST

3  Regulations for the Los Angeles Sheriff's Department, overseeing the Background Investigation Unit

4  ("BIU") lieutenant who supervises the BIU process for the Los Angeles Sheriff's Department

5  ("LASD").  Pursuant to the Los Angeles County Code, defendant COUNTY is subject to a number of

6  California statutes and regulations setting forth mandatory pre-hiring screening procedures of peace

7  officer candidates.  Defendant COUNTY failed to follow the mandatory requirements in its pre-hiring

8  screening of McClain in 2007 by failing to administer a background check or psychological evaluation

9  in accordance with the law.  Because the COUNTY failed to administer the background check and

10 psychological evaluation of McClain, McClain was hired and provided with peace officer credentials,

11 which included a firearm and power of authority under color of law.

12     Plaintiff's injuries would not have occurred, but for the following:  (1) Deputy McClain's use

13 of his coercive authority under color of law to remove Plaintiff from his residence and take him to a

14 private location for battery and torture; (2) County of Los Angeles' negligence in its hiring, training

15 and supervision of Deputy McClain; and (3) County of Los Angeles' failure to discharge its mandatory

16 duties under the law in its hiring, training and supervision of Deputy McClain.  The COUNTY is

17 vicariously liable for Plaintiff's damages based on the negligent conduct of Sheriff McClain while

18 acting under color of law and (2) the negligence of Baca and the BIU personnel in failing to administer

19 the pre-hire background check and psychological evaluation of McClain as mandated by the California

20 Penal Code, Government Code, and corresponding POST requirements.  Moreover, the COUNTY is

21 liable for Plaintiff's damages based upon its failure to discharge its mandatory duties as codified by the

22 California Penal Code, Government Code, and corresponding POST requirements.

23         **IV.**   **BACKGROUND STATUTES AND REGULATIONS**

24     Pursuant to Los Angeles County Code §2.34.060, the County, while receiving aid from the

25 state of California, will adhere to the standards for recruitment and training established by the

26 California Commission on Peace Officers Standards and Training ("POST").  POST is an independent

27 commission that devises minimal requirements for background investigations for law enforcement

28 agencies, such as the LASD.  POST is charged with the responsibility to develop selection standards

- 5 -

1   for peace officers.   (Penal Code §13510.)   As a California regulatory agency, POST establishes

2   regulations in accordance with the Administrative Procedures Act.   Once properly adopted, these

3   regulations appear in the California Code of Regulations and the POST Administrative Manual.[2] "The

4   POST Administrative Manual provides the procedure for the background investigation 'shall be

5   followed in the pre-employment investigation of each peace officer and/or public safety dispatcher and

6   shall be completed on or before the appointment date.'" (*Hulings v. State Dept. of Health Care*

7   *Services* (2008) 159 Cal.App.4th 1114, 1123 (citing 11 Cal. Code Regs. Tit. 11, § 1002(a)).)   "A public

8   agency must enforce the criteria for peace officers in Government Code § 1031 at the time of hire."

9   (*Pitts v. City of Sacramento* (2006) 138 Cal.App.4th 853, 857, fn. 3; see also *Sager v. County of Yuba*

10   (2007) 156 Cal.App.4th 1049, 1058.)

11        The Penal Code provides that municipalities such as defendant COUNTY can receive state

12   funds for specified law enforcement purposes.   As a condition of receiving such funds, a municipality

13   such as defendant <u>must agree</u> to recruitment and training standards established POST.   (Penal Code

14   § 13522.)   "To be eligible for participation in the POST Program, a department <u>shall agree</u> to comply

15   with and continue to adhere to minimum selection and training standards and all Commission

16   Regulations." (11 C.C.R. § 9030(a) (emphasis added); see also Penal Code §§ 13500, 13510, 13522.)

17        Government Code § 1031 states in pertinent part, "Each class of public officers or employees

18   declared by law to be peace officers <u>shall meet all</u> of the following minimum standards: ... (d) Be of

19   good moral character, as determined by a thorough background investigation ... (f) Be found to be free

20   from any physical, emotional, or mental condition that might adversely affect the exercise of the

21   powers of a peace officer.   (1) Physical condition <u>shall</u> be evaluated by a licensed physician and

22   surgeon.   (2) Emotional and mental condition <u>shall</u> be evaluated by either of the following: (A) A

23   physician and surgeon [with psychiatry training] (B) A [licensed] psychologist ... (g) this section shall

24   not be construed to preclude the adoption of additional or higher standards, including age." (Gov.

25   Code § 1031 (emphasis added); see also 11 Cal. Code Reg. §§ 9053, 9055.)

26

27   [2] The POST Administrative Manual, which includes Commission Procedure C-1; C-2; C-3, are
available on http://www.post.ca.gov/regulations/manual.asp and attached to the First Amended

28   Complaint.

OPPOSITION TO DEFENDANTS COUNTY OF L.A./BACA'S MOTION TO DISMISS 1ST AMENDED COMPLAINT
**CASE NO. CV 09-7587-R (AJW)**

The purpose of the background investigation established in § 9053 is to verify the absence of past behavior indicative of unsuitability to perform the duties of a peace officer. (Commission Procedure C-1.) The background investigation procedure "shall be followed in the pre-employment investigation of each peace officer ... candidate and shall be completed on or before the appointment date." (Commission Procedure C-1, 1-2.) "The manner in which a background investigation is conducted can make the difference between hiring an individual who will truly protect and serve versus someone who may cause harm to oneself, the agency, and society." (POST Background Investigation Manual 1-1[3].)

The purpose of the psychological suitability examination is to select personnel who are free from any mental or emotional condition that would be expected to adversely affect their performance as a peace officer. (Commission Procedure C-2, 2-1.) "The psychological suitability examination requirement, include: (a) A minimum of two psychological test shall be used. One must be normed in a manner as to identify patterns of abnormal behavior; the other must be oriented toward assessing relevant dimensions of normal behavior. (b) A clinical interview shall be conducted. The psychological test results shall be reviewed in advanced by the individual who conducts the interview. (c) Interpretation of the psychological test score information and conduct of the clinical interview shall be performed by a qualified professional." (Commission Procedure C-2, 2-9.)

Government Code §1029(A) & (B) provides that individuals who have been convicted of a felony, as well as felony-level and felony-related offenses are prohibited from becoming peace officers. Similarly, Penal Code § 12021(c) includes a list of misdemeanors that result in a ten-year firearm ban, which prevent an individual's ability to perform essential peace officer job functions. In addition, 18 U.S.C. § 922(d)(9) provides that an individuals who have been convicted of domestic violence cannot possess a firearm. The background investigation provides mandatory inquiries for the investigator in order to determine whether the candidate has committed a felony or misdemeanor. (*See e.g. Gov. Code § 1031.)

All peace officers, including those administering the background investigations complying with

---

[3] The POST Background Investigation Manual is available at http://www.post.ca.gov/selection/bim/bi-manual.asp.

1  POST, adhere to the POST Code of Ethics, which provides the following, in pertinent part: "As a law

2  enforcement officer, my fundamental duty is to serve mankind; to safeguard lives and property; to

3  protect the innocent against deception, the weak against oppression or intimidation, and the peaceful

4  against violence or disorder; and to respect the Constitutional rights of all men to liberty, equality and

5  justice." (Commission Procedure C-3, 3-2.)

6  ### V.   LEGAL STANDARD

7  To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a plaintiff must allege

8  "enough facts to state a claim to relief that is plausible on its face." (*Bell Atl. Corp.* (2007) 550 U.S.

9  544.)  While courts do not require "heightened fact pleading of specifics," a plaintiff must provide

10  "more than labels and conclusions." (*Id.*)  In deciding whether the plaintiff has stated a claim upon

11  which relief can be granted, the Court must assume that a plaintiff's allegations are true and must draw

12  all reasonable inferences in the plaintiff's favor. (*See Usher v. City of Los Angeles* (9th Cir. 2008) 536

13  F.3d 1049, 1055.)  If the Court dismisses the First Amended Complaint, it must then decide whether to

14  grant leave to amend.  The Ninth Circuit has "repeatedly held that a district court should grant leave to

15  amend even if no request to amend the pleading was made, unless it determines that the pleading could

16  not possible be cured by the allegation of other facts." (*Lopez v. Smith* (9th Cir. 2000) 203 F.3d 1122,

17  1130.)

18  ### VI.   LEGAL ARGUMENT

19  **A.   Public Entity Liability Applies in this Unique Case**

20  The California Tort Claims Act is a comprehensive statutory scheme that sets forth the liability

21  and immunities of public entities and public employees for torts. (Gov. Code § 810 *et seq.*; *Aubry v.*

22  *Tri-City Hospital Dist.* (1992) 2 Cal.App.3d 1059.)  Unless granted specific statutory immunity, a

23  public entity is liable in tort for the same causes of action that could be brought against a private

24  person. (*Jordan v. City of Sacramento* (2007) 148 Cal.App.4th 1487.)  As a general rule, public entity

25  liability only exists if there is an express statutory basis for such liability. (*Lockhart v. County of Los*

26  *Angeles* (2007) 155 Cal.App.4th 289.)  Here, public entity liability against the COUNTY is triggered

27  based upon three independent statutory basis, including Government Code § 815.2, Government Code

28  § 815.6 and 42 U.S.C. § 1983.

- 8 -

**B.**   **Plaintiff Has Stated a Claim for Relief under Gov. Code § 815.2**

"A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." (Gov. Code § 815.2.)  In other words, the public entity is held vicariously liable for the negligence acts of its employees under the theory of respondeat superior.

The California Supreme Court has articulated three reasons for applying the principle of respondeat superior against employers, including public entities: "(1) to prevent recurrence of the tortious conduct; (2) to give rise to greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 209.)  An employer's vicarious liability is not limited to an employee's negligent acts or omissions.  A willful, malicious and even criminal act may fall within the scope of employment, if the act has "a causal nexus to the employee's work."  (*M.P. v. City of Sacramento* (2009) 177 Cal.App.4[th] 121 (citing *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4[th] 291).)  "Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when "the facts are undisputed and no conflicting inferences are possible." (*Mary M., supra*, 54 Cal.3d at 213 (citing *Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968).)

Defendant COUNTY argues that Plaintiff has not stated a claim for relief under Government Code § 815.2 because: (1) Deputy Sheriff McClain was not acting within the scope of his authority when he tortured Plaintiff and (2) there exists no statute permitting vicarious liability for the County's negligent recruitment and training.  Defendant is wrong in its reading of Plaintiff's First Amended Complaint and application of the relevant statutory and case law.  Instead, direct liability under Government Code § 815.2 applies in this case against COUNTY for (1) the negligent acts of its employee Deputy Sheriff McClain during the course and scope of his employment and under color of law and (2) the negligent acts of the County, Sheriff Baca and BIU personnel in failing to follow their pre-hiring duties as set forth in the California Penal Code, Government Code, and POST regulations.  Essentially, Plaintiff's direct negligence claim under § 815.2 against the COUNTY is grounded in

- 9 -

1  respondeat superior and vicarious liability based upon the acts and omissions of defendants'

2  employees.

3        **1.        Deputy Sheriff McClain's Conduct Gives Rise to Defendant County's Negligence**

4        Defendant argues that vicarious liability against COUNTY is not triggered by Deputy Sheriff

5  McClain's conduct because there is no allegation that Deputy Sheriff McClain was acting within the

6  scope of his authority when he tortured Plaintiff.  Defendant incorrectly states that Plaintiff alleges that

7  Deputy Sheriff McClain criminally assaulted Plaintiff "while off-duty."  Nothing in the First Amended

8  Complaint suggests that Deputy Sheriff McClain was "off-duty" at the time of the physical assault on

9  Plaintiff took place.  Whether Deputy Sheriff McClain was acting under color of law is a factual issue

10  that should be decided by the trier of fact and not determined at this early pleading stage without the

11  benefit of discovery.   Furthermore, Defendant COUNTY's claim that Deputy Sheriff McClain's

12  conduct is not causally connected to his work is also a factual issue to be decided by a trier of fact and

13  not at the pleading stage.  In any event, the facts alleged in the First Amended Complaint sufficiently

14  state a claim against defendant COUNTY based upon the acts of Deputy Sheriff McClain.

15        All of the cases cited in support of COUNTY's argument were adjudicated on motions for

16  summary judgment and/or after trial.[4]  COUNTY heavily relies on *Van Ort v. Estate of Stanewich* (9th

17  Cir. 1996) 92 F.3d 831 in support of its argument that Plaintiff has no claim against defendant based

18  upon the conduct of McClain.  However, *Van Ort* is inapposite to this case.  In *Van Ort*, victims of an

19  assault and attempted robbery brought action against the county and an off-duty deputy's estate

20  _____

[4] (1) *M.P. v. City of Sacramento* (2009) 177 Cal.App.4th 121, 128-129 (City filed for summary
21  judgment, no opposition filed, Court of Appeal affirmed.  Plaintiff brought action against city and two
   city firefighters alleging that she was sexually assaulted by two firefighters while in fire truck at Porn
22  Star Costume Ball convention; court held that there was no vicarious liability because the acts were not
   within the scope of firefighter's employment since they had no coercive authority over victim.);
23  (2) *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291 (Hospital filed for
   summary judgment, which was granted; Ultimately, Supreme Court held that the hospital was entitled
24  to summary judgment on the ground that the ultrasound technician's sexual misconduct was beyond
   the scope of his employment and therefore, hospital could not be vicariously liable under doctrine of
25  respondeat superior.); (3) *Van Ort v. Estate of Stanewich* (9th Cir. 1996) 92 Fl.3d 831.  (County
   obtained summary judgment on respondeat superior liability and judgment as a matter of law on the
26  state law negligence claims.  The Ninth Circuit affirmed in part and reversed in part.); (4) *Farmers Ins.
   Group v. County of Santa Clara* (1995) 11 Cal.4th 992 (County obtained summary judgment on the
27  ground that the deputy's sheriff's conduct of lewdly propositioning and offensively touching two
   fellow female deputy sheriffs while working together at the county jail was outside the scope of his
28  employment as a matter of law.)

1  seeking damages pursuant to 42 U.S.C. § 1983 and several state laws for deputy's involvement in

2  crimes, including vicarious liability and negligent supervision.   The County obtained summary

3  judgment on respondeat superior liability and judgment as a matter of law on the state law negligence

4  claims.  The Ninth Circuit affirmed in part and reversed in part.

5  　　　　The *Van Ort* case is distinguishable from this case for a number of reasons. <u>First</u>, the *Van Ort*

6  case came after summary judgment and judgment as a matter of law after the parties had an

7  opportunity to engage in discovery. <u>Second</u>, the undisputed facts established that the plaintiffs could

8  not prove essential elements of their claims.   Specifically, the undisputed facts established that

9  plaintiffs could not prove causation or that the deputy was acting under color of state law. (*Id.*)  The

10 court held that the deputy's private actions of assaulting and attempting to rob the victims were the

11 intervening causes which precluded any county liability for § 1983 on alleged negligent hiring and

12 supervision grounds. (*Id.*)  In addition, the undisputed facts showed that the off-duty deputy was not

13 acting under color of state law because he showed up at the victims' house wearing blue jeans, a mask

14 over his face, latex gloves, and that he did not display and badge and denied being a police officer.

15 (*Id.*)

16 　　　　Here, in stark contrast, Plaintiff's case is in its infancy with the First Amended First Amended

17 Complaint recently filed and no discovery having been taken.  In addition, unlike the undisputed facts

18 in *Van Ort*, Plaintiff's First Amended Complaint in this case adequately alleges that McClain's actions

19 were done within the scope of his employment and under color of state law and his actions were a

20 substantial cause of Plaintiff's injuries.  Deputy McClain used his coercive authority over Plaintiff

21 under color of law to persuade Plaintiff to enter into TIC's private business premises.  The First

22 Amended Complaint provides, in pertinent part: "Under color of law and within the scope of his

23 employment, McClain persuaded Plaintiff to exit his residence and walk with McClain and Employee

24 towards the Woodbury Court leasing office.  McClain stated that he was a Los Angeles Deputy Sheriff

25 and that he wanted to speak with Mr. Heflin.  Plaintiff's roommates witnessed Deputy Sheriff McClain

26 at the front door and knew that he was a peace officer.  As a result, Plaintiff's roommates did not

27 perceive a threat to Plaintiff's safety and did not contact the police when Mr. Heflin did not return

28 hours after he was taken by Deputy Sheriff McClain.  Using his peace officer status and training,

- 11 -

McClain removed Plaintiff from Plaintiff's apartment.  During this process McClain identified himself as a peace officer, exerted control over Plaintiff, and directed Plaintiff to the torture location in TIC's leasing office.  McClain told Employee and Plaintiff that he wanted to speak with Plaintiff in private.  Employee agreed to open the leasing office so they could talk in private.  Employee opened the leasing office door with her business key, deactivated the alarm after hours, and then proceeded with Deputy McClain and Plaintiff into the empty office building.  Once inside, McClain, acting under color of law and within the scope of his employment as a peace officer, proceeded to physically and emotionally torture Plaintiff.  Believing that Plaintiff was dead, McClain left the leasing office with Employee.  McClain failed to alert any medical personnel of the incident or Plaintiff's substantial injuries.  Plaintiff was found in a pool of blood the following morning by the TIC personnel.  On September 29, 2008, Plaintiff was taken to Western Medical Center in Irvine, California.  He arrived completely nude and unconscious.  Plaintiff had multiple large open facial wounds, both of his eyes were deeply cut, his groin area slashed, he had wounds on his arms, chest and back, he had been strangled, and his face was crushed.  Plaintiff lay unconscious in the hospital for nine days."  (See First Amended Complaint 27-32.)

Certainly, the facts alleged in the First Amended Complaint are sufficient to show that Deputy Sheriff McClain acted under color of law and within the scope of his employment when he decided to use his state issued authority by identifying himself as a peace officer and using his state issued firearm to transfer Plaintiff into a secluded area for torture.

In *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, the California Supreme Court determined that the City of Los Angeles could be held liable on a theory of respondeat superior for the actions of an officer who raped a woman that he had detained.  The Court's language is instructive and applicable to this case wherein Plaintiff Heflin was detained and sexually tortured by Deputy Sheriff McClain.  For instance, the Court reasoned, "[s]ociety has granted police officers extraordinary power and authority over its citizenry.  An officer who detains an individual is acting as the official representative of the state with all of its coercive power."  (*Id.* at 216.)  "Those who challenge an officer's actions do so at their peril; anyone who resist an officer's proper exercise of authority or who obstructs the performance of an officer's duties is subject to criminal prosecution."  (*Id.* at 206.)  The

1   question of whether the public entity employing the police officer misusing his authority is a question

2   of fact for the jury. (*Id.* at 221; see also *Farmers Ins., supra*, 11 Cal.4th at 1012 & 1019 ("work related

3   authority over victim was in no way comparable to the extraordinary power and authority that police

4   officers exercise over members of the public.").)

5          Here, Deputy Sheriff McClain identified himself as a peace officer and used his state issued

6   firearm to coerce Plaintiff to follow him to the business premises of TIC to speak privately.  Once

7   inside, Deputy Sheriff McClain used his peace officer status, training, authority, and state issued

8   firearm to physically and sexually injure Plaintiff.  This is precisely the type of case that fits within the

9   construct of *Mary M., supra* and not the other cases cited by defendant COUNTY.  Clearly, Plaintiff

10  has stated a claim for direct negligence against COUNTY for the actions of Deputy Sheriff McClain.

11         **2.    Sheriff LeRoy Baca and BIU Personnel's Conduct Give Rise to Defendant**
12                **County's Negligence**

13         Defendant COUNTY incorrectly argues that Plaintiff has failed to identify an independent

14  statutory basis for the direct negligence claims against COUNTY based on negligent hiring, training

15  and supervision.  Defendant also incorrectly argues that Plaintiff does not allege that Defendant

16  COUNTY owed a special duty of care to Plaintiff.  In support of its argument, defendant cites

17  *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175.[5]  In *Eastburn, supra*, a minor

18  child and her parents sued public entities that provided 911 emergency dispatch services, alleging that

19  the minor suffered injuries based on the failure of the emergency services to provide prompt response

20  to the 911 call.  In upholding the trial court order and judgment, the Supreme Court did not address

21  claims of negligent hiring, training or supervision.  Instead, the Court held that the emergency dispatch

22  service provider was immune from liability under Health & Safety Code § 1799.107.  (*Id.* at 1184.)  In

23  so holding, the Court generally stated that for direct liability against a governmental agency, the

24  injured party must identify a "specific statute declaring the entity to be liable, or at least creating some

25  ─────────────────────
    [5] Defendants also cite *de Villers v. County of San Diego* (2007) 156 Cal.App.4th 238.  Defendants'
26  reliance on *de Villers* is also misplaced.  In *de Villers*, the Court held that the Office of Medical
    Examiner was not directly liable for alleged negligent hiring and supervising of employee who
27  murdered husband with illicit toxic materials because plaintiff failed to ground such claims on a
    "specific statute declaring them to be liable, or at least creating some specific duty of care, and not on
28  the general tort provisions of Civil Code § 1714." (*Id.* at 255 (citing *Eastburn, supra*, at 1182-1183.)

- 13 -

1   specific duty of care" by the agency in favor of the injured party.  (*Id.* at 1180.)  To the extent

2   *Eastburn, supra,* creates an initial burden on the plaintiff at the pleading stage to identify a statute,

3   outside of §815.2 and Civil Code § 1714, which would create a duty of care on the public entity,

4   Plaintiff has met this initial burden.  Indeed, defendant COUNTY even admits in its motion to dismiss

5   that the statutes delineated in Plaintiff's First Amended Complaint "describe a duty to investigate."

6   Although Plaintiff argues that the statutes in the First Amended Complaint confer a broader duty upon

7   defendant COUNTY, Plaintiff, at a minimum, has met his burden by setting forth with particularity the

8   California statutes and regulations establishing a duty of care towards Plaintiff in the hiring, training

9   and supervision of Deputy Sheriff McClain.

10          This case is more in line with *Bonsignore v. City of New York* (1982) 683 F.2d 635.   In

11   *Bonsignore,* the New York Court of Appeals determined that there was sufficient evidentiary support

12   in finding public entity negligence on the grounds that the City maintained deficient procedures

13   regarding identification of police officers who should not carry firearms.  The Court reasoned that the

14   City could reasonably have anticipated that its negligence in failing to identify officers who were unfit

15   to carry guns would result in an unfit officer injuring someone using the gun he was required to carry.

16   (*Id.* at 638.)

17          Here, Plaintiff identifies with specificity the statutes and regulations that provide for an

18   independent basis for the direct negligence claims against COUNTY.  As set forth in detail above,

19   pursuant to Los Angeles County Code §2.34.060, the County, while receiving aid from the state of

20   California, will adhere to the standards for recruitment and training established by POST.  "To be

21   eligible for participation in the POST Program, a department shall agree to comply with and continue

22   to adhere to minimum selection and training standards and all Commission Regulations."  (11 C.C.R.

23   § 9030(a) (emphasis added); see also Penal Code §§ 13500, 13510, 13522; see also *Commission on*

24   *Peace Officer Standards and Training v. Superior Court* (2007) 42 Cal.4[th] 278, 285 ("Every law

25   enforcement department that participates in Commission programs and receives funding from the

26   Commission is required to comply with the Commission's minimum selection and training standards

27   for peace officers.").)  "If the minimum standards are to have any real meaning, a candidate has to

28   meet the standards *prior* to becoming a peace officer.  In other words, a law enforcement agency

- 14 -

1    cannot *first* grant peace officer status to a civilian, including full peace officer powers, and *then*

2    conduct its background investigation." (*County of Riverside v. Superior Court* (2002) 27 Cal.4[th] 793,

3    806 (emphasis in original).)

4         Government Code § 1031 states in pertinent part, "Each class of public officers or employees

5    declared by law to be peace officers <u>shall meet all</u> of the following minimum standards: … (d) Be of

6    good moral character, as determined by a thorough background investigation … (f) Be found to be free

7    from any physical, emotional, or mental condition that might adversely affect the exercise of the

8    powers of a peace officer.  (1) Physical condition <u>shall</u> be evaluated by a licensed physician and

9    surgeon.  (2) Emotional and mental condition <u>shall</u> be evaluated by either of the following: (A) A

10   physician and surgeon [with psychiatry training] (B) A [licensed] psychologist … (g) this section shall

11   not be construed to preclude the adoption of additional or higher standards, including age." (Gov.

12   Code § 1031 (emphasis added); see also 11 Cal. Code Reg. §§ 9053, 9055.)  The statute "reflects the

13   public's interest in high quality law enforcement personnel.  The law contemplates that new applicants

14   be subject to the background investigation before they are hired." (*County of Riverside, supra*, 27

15   Cal.4[th] at 798.)  Sheriff LeRoy Baca was and is charged with the responsibility of enforcing the POST

16   Regulations for the LASD, including overseeing the BIU lieutenant who supervises the BIU process.

17        The purpose of the background investigation established in § 9053 is to verify the absence of

18   past behavior indicative of unsuitability to perform the duties of a peace officer.  (Commission

19   Procedure C-1.)  All peace officers, including those administering the background investigations

20   complying with POST, adhere to the POST Code of Ethics, which provides the following, in pertinent

21   part: "As a law enforcement officer, my fundamental duty is to serve mankind; to safeguard lives and

22   property; to protect the innocent against deception, the weak against oppression or intimidation, and

23   the peaceful against violence or disorder; and to respect the Constitutional rights of all men to liberty,

24   equality and justice." (Commission Procedure C-3, 3-2.)  The independent statutory basis set forth

25   above clearly creates a duty of care on the COUNTY by and through its representatives and employees

26   to protect Plaintiff against the hiring of peace officers unsuitable to perform their duties, which include

27   Deputy Sheriff McClain who had a history of violent behavior and domestic abuse.

28        The natural and foreseeable consequence of failing to abide by the pre-hiring screening

- 15 -

1    procedures set forth in §1031 and the corresponding POST regulations is allowing individuals such as

2    McClain, who were unfit to carry firearms and wield the power of the state, the opportunity to do use

3    their state issued firearm and power of authority to injure someone such as Plaintiff.  Therefore, based

4    upon the facts set forth in the First Amended Complaint, Plaintiff has stated a claim for relief under §

5    815.2 based upon the negligent acts of Sheriff Baca and the BIU personnel.

6    **C.     Plaintiff Has Stated a Claim for Relief under Gov. Code § 815.6**

7            Pursuant to Government Code § 815.6, "Where a public entity is under a mandatory duty

8    imposed by an enactment that is designed to protect against the risk of a particular injury, the public

9    entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless

10   the public entity establishes that it exercised reasonable diligence to discharge the duty."  A plaintiff

11   must show the following in order to establish public entity liability under section 815.6: "(1) an

12   enactment must impose a mandatory, not discretionary, duty; (2) the enactment must intend to protect

13   against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability;

14   and (3) breach of the mandatory duty must be a proximate cause of the injury suffered."  (*Haggis v.*

15   *County of Los Angeles* (2000) 22 Cal.4th 490, 498.)  "The enactment's language is of course a most

16   important guide in determining legislative intent."  (*Id.* at 499.)

17           In its 12(b)(6) motion, defendant COUNTY argues that the statutes cited in Plaintiff's First

18   Amended Complaint do not impose a mandatory duty on COUNTY.[6]  (See Motion at p. 7, ln. 8.)

19   Instead, defendant argues that the pre-screening requirements codified in Los Angeles County Code

20   § 2.34.060, Government Code § 1031, and POST regulations §9050, 9053, and 9055 are discretionary

21   because they describe a duty to investigate.  Defendant COUNTY's argument is unsupported by case

22   law and misreads the statutes and regulations at issue.

23           **1.     The Pre-Screening Objective Procedural Requirements Are Mandatory, Not**
             **Discretionary**

24

25           As set forth above, POST is an independent commission that devises minimal requirements for

26   background pre-screen procedures for law enforcement agencies, such as the LASD.  "Every law

27   _____

28   [6] In its moving papers, defendant COUNTY makes no argument that the two additional requirements
     under *Haggis*, *supra*, have not been met by Plaintiff in this case.

- 16 -

1   enforcement department that participated in Commission programs and receives funding from the

2   Commission is <u>required</u> to comply with the Commission's minimum selection and training standards

3   for peace officers, and must permit the Commission to inspect its records in order to … confirm

4   departmental compliance with Commission regulations." (*Commission on Peace Officer Standards*

5   *and Training, supra*, 42 Cal.4th 278.)  Los Angeles County Code §2.34.060, provides that the County

6   will adhere to the standards for recruitment and training established by POST.

7           POST is charged with the responsibility to develop selection standards for peace officers.

8   (Penal Code §13510.)  As a California regulatory agency, POST establishes regulations in accordance

9   with the Administrative Procedures Act.   Once properly adopted, these regulations appear in the

10  California Code of Regulations and the POST Administrative Manual, which is attached to the First

11  Amended Complaint.  "The POST Administrative Manual provides the procedure for the background

12  investigation 'shall be followed in the pre-employment investigation of each peace officer and/or

13  public safety dispatcher and shall be completed on or before the appointment date.'" (*Hulings v. State*

14  *Dept. of Health Care Services* (2008) 159 Cal.App.4th 1114, 1123 (citing 11 Cal. Code Regs. Tit. 11,

15  § 1002(a)).)  "A public agency must enforce the criteria for peace officers in Government Code § 1031

16  at the time of hire." (*Pitts v. City of Sacramento* (2006) 138 Cal.App.4th 853, 857, fn. 3; see also *Sager*

17  *v. County of Yuba* (2007) 156 Cal.App.4th 1049, 1058.)

18          The pre-screening requirements in Government Code § 1031 are not discretionary, but instead

19  are mandatory.   In determining whether the public agency has complied with the pre-screening

20  requirements, POST can evaluate objectively whether such compliance occurred.   (11 Cal.Code

21  § 9030(b)(1) ("If the Commission determines that a department has failed to adhere to Commission

22  Regulations … the Commission shall notify the department of its concerns and of the department's

23  possible removal from the Program(s).");  see also Penal Code § 13523 ("In no event shall any

24  allocation be made to any city, county, or district which is not adhering to the standards established by

25  the commission as applicable to such city, county, or district.").)

26          The Penal Code provides that municipalities such as defendant COUNTY can receive state

27  funds for specified law enforcement purposes.  As a condition of receiving such funds, a municipality

28  such as defendant <u>must agree</u> to recruitment and training standards established POST. (Penal Code

- 17 -

§ 13522.) "To be eligible for participation in the POST Program, a department shall agree to comply with and continue to adhere to minimum selection and training standards and all Commission Regulations." (11 C.C.R. § 9030(a) (emphasis added); see also Penal Code §§ 13500, 13510, 13522.)

Government Code § 1031 states in pertinent part, "Each class of public officers or employees declared by law to be peace officers shall meet all of the following minimum standards: … (d) Be of good moral character, as determined by a thorough background investigation … (f) Be found to be free from any physical, emotional, or mental condition that might adversely affect the exercise of the powers of a peace officer. (1) Physical condition shall be evaluated by a licensed physician and surgeon. (2) Emotional and mental condition shall be evaluated by either of the following: (A) A physician and surgeon [with psychiatry training] (B) A [licensed] psychologist … (g) this section shall not be construed to preclude the adoption of additional or higher standards, including age." (Gov. Code § 1031 (emphasis added); see also 11 Cal. Code Reg. §§ 9053, 9055.)

The purpose of the background investigation established in § 9053 is to verify the absence of past behavior indicative of unsuitability to perform the duties of a peace officer. (Commission Procedure C-1.) The background investigation procedure "shall be followed in the pre-employment investigation of each peace officer … candidate and shall be completed on or before the appointment date." (Commission Procedure C-1, 1-2.) "The manner in which a background investigation is conducted can make the difference between hiring an individual who will truly protect and serve versus someone who may cause harm to oneself, the agency, and society." (POST Background Investigation Manual 1-1.) Commission Procedure C-1, which is part of the POST Administrative Manual, details the nature and scope of the background investigation and the required sources of information. For peace officers, these sources of information are required. (Commission Procedures C-1, 1-2 (regulatory language begins with the following: "This procedure shall be followed in the pre-employment investigation of each peace officer … and shall be completed on or before the appointment date."); see also Commission Procedure C-1, 1-3, 1-4.).)

Likewise, the purpose of the psychological suitability examination is to select personnel who are free from any mental or emotional condition that would be expected to adversely affect their performance as a peace officer. (Commission Procedure C-2, 2-1.) "The psychological suitability

- 18 -

examination requirement, include: (a) A minimum of two psychological tests shall be used.  One must be normed in a manner as to identify patterns of abnormal behavior; the other must be oriented toward assessing relevant dimensions of normal behavior.  (b) A clinical interview shall be conducted.  The psychological test results shall be reviewed in advanced by the individual who conducts the interview.  (c)  Interpretation of the psychological test score information and conduct of the clinical interview shall be performed by a qualified professional." (Commission Procedure C-2, 2-9.)  Whether or not the psychological suitability examination was done in conformance with the POST requirements is an objective determination, one that is mandatory and offers no discretion on the public entity.

Unlike the cases cited by defendant COUNTY, the POST regulations confer a mandatory duty upon defendant to follow specific pre-screening procedures which are not discretionary.  For example, in *de Villers, supra*, 156 Cal.App.4th at 268-69, the Court determined that the statute at issue, 21 Code of Federal Regs part 13071(a) required the defendant to provide "effective controls" to "guard against" theft of controlled substances.  The regulation did not impose mandatory methods or procedures to guard against theft.  Instead, it set goals to allow latitude on how best to achieve those goals.  (*Id.*) Here, however, the pre-screening procedures are specific procedures, not goals, and failure to follow those procedures results in the removal from the state sponsored program(s).  (See 11 Cal. Code Regs. § 9030(b)(1).)  There is nothing debatable about whether defendant COUNTY successfully discharged its mandatory duties.

Here, Plaintiff alleges that defendant failed to follow the POST requirements in its pre-hire screening of Deputy Sheriff McClain.  The statutes and regulations at issue prescribe mandatory duties upon defendant COUNTY and contain no discretionary component.  (See e.g. *Trewin v. State of California* (1984) 150 Cal.App.3d 975 (issuance of license was not a discretionary act, but mandatory); *Corona v. State of California* (Cal.App.4th 2009) 100 Cal.Rptr. 3d 591 (commission had no discretion to permit boxer to box unless the boxer provided a negative HIV test in advance of boxing match).) Defendant COUNTY was required to follow the procedures outlined by POST in advance of hiring Robert McClain.   Whether defendant COUNTY adequately discharged its mandatory duty is a question of fact that cannot be adjudicated at this early stage of discovery.

- 19 -

**2.      The Pre-Screening Requirements of Peace Officers Is Intended to Protect Against the Risk of Injury Suffered by Plaintiff**

"Section 815.6 requires the mandatory duty be 'designed' to protect against the particular kind of injury the plaintiff suffered." (*Sutherland v. City of Fort Bragg* (2000) 86 Cal.App.4th 13, 22.) Here, it is evident that the pre-screening procedures set forth by the Government Code, Penal Code, and POST regulations are intended to screen out unsuitable individuals from peace officer positions. The express purpose of the background investigation established in § 9053 is to verify the absence of past behavior indicative of unsuitability to perform the duties of a peace officer. (Commission Procedure C-1.)   The manner in which a background investigation is conducted can make the difference between hiring an individual who will truly protect and serve versus someone who may cause harm to oneself, the agency, and society.

As set forth in the POST Background Investigation Manual: "POST has the responsibility for developing standards and assuring compliance with those standards for peace officers … POST regulations mandate what must be done in order to satisfy the *minimum* standards for appointment." (POST Background Investigation Manual at 1-2.)   The regulations are designed to weed out the unfit, rather than distinguishing excellent candidates.      (*Id.*)   "The administrative materials governing background investigations are part of the selection process." (*Hulings, supra*, 159 Cal.App.4th at 1123.)   Government Code § 1031 "reflects the public's interest in high quality law enforcement personnel." (*County of Riverside, supra*, 27 Cal.4th at 798.)   The statute is designed to protect members of the public like Plaintiff from harm by peace officers who do not meet the minimum standards for appointment. Here, Deputy Sheriff McClain's should have been screed out from serving as a peace officer if defendant followed the mandatory duties set forth in the state and administrative regulations.   Because the purpose of the mandatory provisions is to screen out unqualified law enforcement personnel in an effort to protect the public, the second element of *Haggis* is met in this case.

**3.      Breach of the Mandatory Duty Was Proximate Cause of Injury**

The third and final prong of section 815.6 is proximate causation. (*Sutherland, supra*, 86 Cal.App.4th at 22.)   Here, the only way that Deputy Sheriff McClain was able to carry out his attack

- 20 -

was by and through the authority vested in him by the COUNTY under color of law and with the use of his state issued firearm. COUNTY's failure to follow the minimum standards set forth by the applicable statutes and regulations set in motion Deputy Sheriff McClain's ability to carry out his violent attack on Plaintiff. (*Id.*) The First Amended Complaint sets forth all of the required elements to establish a claim under Government Code § 815.6. Because all of the elements are met for pleading section 815.6 liability, defendant's 12(b)(6) motion should be denied as to the second cause of action.

## VII.   CONCLUSION

For the reasons set forth herein, Plaintiff Michael Heflin respectfully requests that this Court deny COUNTY's motion to dismiss in its entirety and require COUNTY file an Answer within 5-days of entry of order. In light of Plaintiff's dismissal of the federal cause of action, Plaintiff requests that this Court remand this case back to state court prior to issuance of an order on Defendants' motion to dismiss.

Dated: January 11, 2010

MURPHY, PEARSON, BRADLEY & FEENEY

By _____
Jason E. Fellner
Mark S. Perelman
Thomas P. Mazzucco
Attorneys for Plaintiff
MICHAEL C. HEFLIN

JEF.20062356.doc

- 21 -